01
02
03
04
05
06
07

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

08  JOYCE R.  HARBST,                     )    Case No. C07- 235-RSL
                                          )
09              Plaintiff,                )
                                          )
10       v.                               )
                                          )    REPORT AND RECOMMENDATION
11                                        )
    MICHAEL J. ASTRUE, Commissioner,      )
12  Social Security Administration,       )
                                          )
13              Defendant.                )
    _____)

14

15       Plaintiff Joyce R. Harbst appeals the final decision of the Commissioner of the Social

16  Security Administration ("Commissioner") which denied her applications for Disability

17  Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and

18  XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., 1381 *et seq.*, after a hearing before

19  an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends

20  that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

21                          I.  FACTS AND PROCEDURAL HISTORY

22       Plaintiff is a forty-eight year old woman with a tenth-grade education.  Administrative

23  Record ("AR") at 717.  Her past work experience includes employment as a fruit picking crew

24  member, machine operator, and as a cashier.  AR at 33, 135.  Plaintiff was last gainfully

25  employed in February 2002.  AR at 273.

26       On December 6, 2002, plaintiff filed a claim for DIB, alleging an onset date of

REPORT AND RECOMMENDATION
PAGE — 1

01 February 28, 2001, which she later amended to February 28, 2002.  AR at 81, 273.  The

02 Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 48, 54-56.  On

03 March 5, 2005, a disability hearing was held before an ALJ.  AR at 711-39.  The ALJ found

04 that the plaintiff could perform work existing in significant numbers in the national economy

05 and denied benefits.  AR at 29-47.  The Appeals Council denied Plaintiff's request for review,

06 AR at 7, making the ALJ's decision the final decision of the Commissioner.  20 C.F.R. §§

07 404.981, 422.210.

08        On February 13, 2007, plaintiff timely filed the present action challenging the

09 Commissioner's decision.  Dkt. No. 1.

10                              II.  JURISDICTION

11        Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

12 405(g) and 1383(c)(3).

13                          III.  STANDARD OF REVIEW

14        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

15 social security benefits when the ALJ's findings are based on legal error or not supported by

16 substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

17 Cir. 2005).  "Substantial evidence"  is more than a scintilla, less than a preponderance, and is

18 such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

19 *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

20 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

21 medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

22 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

23 whole, it may neither reweigh the evidence nor substitute its judgment for that of the

24 Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence

25 is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

26 must be upheld.  *Id.*

REPORT AND RECOMMENDATION
PAGE — 2

01    The Court may direct an award of benefits where "the record has been fully developed

02  and further administrative proceedings would serve no useful purpose." *McCartey v.*

03  *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292).  The Court

04  may find that this occurs when:

05      (1)  the ALJ has failed to provide legally sufficient reasons for rejecting the
        claimant's evidence; (2)  there are no outstanding issues that must be resolved
06      before a determination of disability can be made; and (3)  it is clear from the
        record that the ALJ would be required to find the claimant disabled if he
07      considered the claimant's evidence.

08  *Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

09  erroneously rejected evidence may be credited when all three elements are met).

10                         IV.  EVALUATING DISABILITY

11      As the claimant, Ms. Harbst bears the burden of proving that she is disabled within the

12  meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

13  Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in

14  any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

15  expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

16  423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments

17  are of such severity that she is unable to do her previous work, and cannot, considering her

18  age, education, and work experience, engage in any other substantial gainful activity existing

19  in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v.*

20  *Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

21      The Commissioner has established a five step sequential evaluation process for

22  determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

23  404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

24  step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

25  any step in the sequence, the inquiry ends without the need to consider subsequent steps.

26  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20

REPORT AND RECOMMENDATION
PAGE — 3

C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.  DECISION BELOW

On July 7, 2005, the ALJ issued a decision finding:

1.      The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION
PAGE — 4

01    the Social Security Act and is insured for benefits through the date of
      this decision.

02
2.    The claimant has not engaged in substantial gainful activity since the
03         alleged onset of disability.

04
3.    The claimant's right foot tenosynovitis/traumatic arthritis, a shoulder
05         sprain/strain, thoracic outlet syndrome, status post cervical diskectomy
           and fusion, and chronic pain are considered "severe" based on the
06         requirements in the Regulations 20 CFR § 404.1520(c).

07
4.    These medically determinable impairments do not meet or medically
           equal one of the listed impairments in Appendix 1, Subpart P,
08         Regulation No. 4.

09
5.    The undersigned finds the claimant's allegations regarding her
10         limitations are not totally credible for the reasons set forth in the body
           of the decision.

11
6.    The claimant has the following residual functional capacity: full range of
12         sedentary with the exceptions of no overhead reaching, climbing,
           working at heights, or pushing/pulling beyond weight limits for
13         sedentary.

14
7.    The claimant is unable to perform any of her past relevant work.  20
15         C.F.R. § 404.1565.

16
8.    The claimant is a "younger individual."  20 C.F.R. § 404-1563.

17
9.    The claimant has "a limited education."  20 C.F.R. § 404.1564.

18
10.   The claimant has no[ ] transferable skills.  20 C.F.R. § 404.1568.

19
11.   The claimant has the residual functional capacity to perform a significant range
20         of sedentary work.  20 C.F.R. § 404.1567.

21
12.   Although the claimant's exertional limitations do not allow her to perform the
22         full range of sedentary work, using Medical-Vocational Rule 201.19 as a
           framework for decision-making, there are a significant number of jobs in the
23         national economy that she could perform.  Examples of such jobs include work
           as call out operator (DOT #237.367-014), which is unskilled sedentary work
24         with 11,000 jobs nationally; charge account clerk (DOT #205.367-014), which
           is unskilled sedentary work with 38,000 jobs nationally; and an information
25         clerk (DOT #237.367-046), which is unskilled sedentary work with 38,000 jobs
           nationally.

26
13.   The claimant was not under a "disability," as defined in the Social Security Act,
           at any time through the date of this decision.  20 C.F.R. § 404.1520(g).

AR at 40-41.

REPORT AND RECOMMENDATION
PAGE — 5

01

## VI.  ISSUES ON APPEAL

02      The principal issues on appeal are:

03      1.      Did the ALJ err by not properly addressing plaintiff's mental
                impairments and by failing to properly develop the record on that issue?
04
05      2.      Did the ALJ err in determining plaintiff's RFC by not including certain
                limitations?

06      3.      Did the ALJ properly evaluate plaintiff's credibility?

07      4.      Did the ALJ err in finding that plaintiff could perform other work
                existing in the national economy?
08
09  Dkt. No. 10 at 2.

10      The first two issue are dispositive, and require a remand for further proceedings.

11  Because the ALJ failed to consider the plaintiff's mental impairments, this may also require a

12  further review of the adverse credibility determination to the extent that any portion of the

13  adverse credibility determination is based on self-reporting issues, and will require further

14  consideration of whether the plaintiff has the ability to work in other jobs in the national

15  economy, if mental impairments are found after remand.

## VII.  DISCUSSION

16      A.      The ALJ Failed to Properly Develop the Record Regarding Plaintiff's Mental
17              Impairments

18      In the ALJ's eleven-page opinion, the entirety of the ALJ's findings regarding mental

19  impairments is found in a single sentence:  "While there is some mention of episodic mental

20  symptomatology, including some situational depression, such symptoms do not meet

21  durational requirements and are thus considered not severe."  AR at 37.

22      Where the record is ambiguous or inadequate, it is the ALJ's duty to develop the

23  record further. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  This duty exists

24  whether or not the plaintiff is represented by counsel. *Brown v. Heckler*, 713 F.2d 441, 443

25  (9th Cir. 1983).  There are several ways the ALJ can discharge this duty, including but not

26  limited to, subpoenaing plaintiff's physicians or submitting questions to plaintiff's physicians.

REPORT AND RECOMMENDATION
PAGE — 6

01  *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998).

02          On March 15, 2005, plaintiff testified before the ALJ that "with the stress and

03  associated depression [from being unable to work, she] went from 122 pounds down to 86

04  pounds in a month and a half and [was] put in the hospital for three weeks."  AR at 724.

05  Plaintiff further testified that she was seeking treatment from Dr. Pauli, and taking diazepam

06  and clozapine.  AR at 725.

07          The ALJ did not request any information from Dr. Pauli.  Nor did the ALJ address the

08  credibility of plaintiff's subjective complaints as they related to a possible mental impairment.

09  After the hearing, plaintiff submitted additional medical records to the Appeals Council.  AR at

10  685-710.   These records included a July 2005 statement from the plaintiff's treating physician,

11  Dr. Hruby, who made reference to the plaintiff's pre-existing "major depression" as diagnosed

12  by Dr. Pauli and her "previously paid Category 2 psychiatric impairment."  AR at 690.  In June

13  2006, Dr. Hruby indicated that the combination of her physical impairments and the mental

14  impairments meant that the plaintiff would be unable to sustain full-time gainful work.  AR at

15  708.  Dr. Pauli noted twice in June 2006 that the plaintiff's depression had been increasing.

16  AR at 709-10.  A subsequent independent medical evaluation by state physicians revealed that

17  the plaintiff was suffering from severe dysthymia and hysterical personality disorder.   Dr.

18  Kole, the state's psychiatrist, rated that plaintiff's GAF at 40.[2]  AR at 706.  This is indicative

19  of major impairments in areas of judgment, thinking, mood, and social functioning.

20          The ALJ erred when he failed to develop the record.  Although Drs. Hruby and Pauli

21

22          [2]  The GAF is a subjective determination based on a scale of 1 to 100 of "the clinician's

23  judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC ASS'N,
    DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (Text. Rev., 4th ed. 2000).

24  A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, occasional panic
    attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34.  A GAF score of

25  41-50 indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school
    functioning," such as the lack of friends and/or the inability to keep a job.  *Id.*  A GAF score of

26  31-40 indicates "major impairment in several areas, such as work or school, family relations,
    judgment, thinking, or mood." *Id*. at 34.

REPORT AND RECOMMENDATION
PAGE — 7

01  were treating physicians, this error does not require that this matter be remanded for the award

02  of benefits.  The Ninth Circuit has long held that after the ALJ has rendered an opinion,

03  treating physician opinions that are solicited by claimant's counsel for litigation purposes may

04  be rejected as less persuasive.  *See, e.g.*, *Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir.

05  1996); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996); *cf. Johnson v. Callahan*, 975 F.

06  Supp. 1366, 1371 (D. Or. 1997) ("Medical reports issued after the Commissioner's decision . .

07  . are deemed less persuasive than those issued prior to the decision.").  The Court recognizes

08  the risk attendant to this situation.  Were such evidence sufficient to automatically warrant a

09  reversal, no social security appeal would proceed without claimant's counsel first obtaining

10  this surefire declaration.  Nevertheless, the evidence in this case, coming from one of plaintiff's

11  long-time treating physicians with expertise in his field, is not devoid of all probative value.

12  Although the Appeals Council affirmed the decision of the ALJ, this evidence is part of the

13  record on review to this Court.  *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996);

14  *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).  Accordingly, while Dr. Hruby's July

15  2005 declaration may support plaintiff's argument that the ALJ improperly assessed the

16  opinions of Dr. Hruby that were before him,[3] it does not automatically mandate a remand

17  under the previously mentioned standards.  See *McCartey*, 298 F.3d at 1076-1077.

18      On remand, the ALJ is directed to develop the record to determine the extent and

19  impact of the plaintiff's mental impairments, if any.

20      B.    If Plaintiff Is Found to Have Any Mental Impairments on Remand, then the
             ALJ Is Directed to Perform a New RFC

21

22      Because a plaintiff's RFC is to consider all limitations that a plaintiff may have before

23  determining whether there are jobs for her in the national economy, the ALJ must also

     consider the impact of any non-exertional limitations resulting from plaintiff's mental

24

25  _____

26      [3]  The Court uses the term "may" here because it concludes that this case would be
     remanded for further proceedings regardless of the information contained in Dr. Hruby's 2005
     declaration.

REPORT AND RECOMMENDATION
PAGE — 8

01  impairments.  Accordingly, on remand, the ALJ is directed to re-evaluate the plaintiff's RFC,

02  taking into account any new impairments found.[4]

03                                     VIII.  CONCLUSION

04          For the foregoing reasons, the Court recommends that this case be REVERSED and

05  REMANDED to the Commissioner for further proceedings not inconsistent with this opinion.

06  A proposed order accompanies this Report and Recommendation.

07          DATED this 15th day of January, 2008.

08

09                                                 *James P. Donohue*
                                                   _____
10                                                 JAMES P. DONOHUE
                                                   United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24  _____

25          [4]  This does not preclude the ALJ from reexamining his RFC to ensure that all physical
    impairments have been included as well.  For example, from June 2000 until June 2002, Dr. Bruce
26  treated the plaintiff for her left arm and shoulder pain.  He opined that the plaintiff would likely have
    to refrain from work which required repetitive use of her left arm.  AR at 401.  He repeated this
    assessment in June 2002.  AR at 397.  The ALJ did not address this limitation in his RFC.

REPORT AND RECOMMENDATION
PAGE — 9